Good morning, Your Honors. May I begin? Yes, please. Thank you. My name is Brenton Akinhans from the Office of Jury Steering on behalf of the Plaintiff and Appellant. So, Your Honors, the essence of this case is captured in a single statement found on a DA disposition report at pages 99 through 100 of the Exercise of Record. Refile once the victim is secured for trial. So, Appellant Knaan knew, and her office knew, that Ms. Martin was the victim in this case and there was published case law and a statute that put her on notice that she was a victim of domestic violence and therefore could not be taken into custody for refusing to testify, even if she had. But the opposing counsel says that issue was never raised to the district court and has waived. It was never argued or raised. You're referring to the Marcy's Law issue, right? Yes, I'm referring to Code of Civil Procedures, Section 1219B. And I just want to make clear that that's just one aspect of the broader argument regarding the process that she was due. Well, was that raised, the argument that as a victim of domestic violence under Marcy's Law, she could not be, I think the language they use is contempt, right, that she couldn't be held in contempt. So it's not exactly on point, but the question is whether that was raised to the district court or not. So her status as a victim, I believe, was discussed, the specific Marcy's Law section in 1219B was not. Okay, so the argument, the specific argument about the applicability of 1219B was not raised to the district court. That specific argument, although I would point out that that is just an aspect of the broader argument regarding the process that she was due. And also that this court always has jurisdiction to correct, you know, to apply the law correctly. And that is the law, that she was a victim of domestic violence crime. We have a uniquely on-point case from the California Court of Appeal that says a witness to the beating of a family dog is a domestic violence victim. Which case are you referring to? That would be the Kovacic case. That is, if you'd like the citation, that's 201 Calop 4th, 863. Is that in one of the briefs? Yes, that is. In our opening brief, that is also, I believe I mentioned it again in our reply brief, but it says specifically, so one who witnesses an assault on the family dog is a domestic violence victim within the meaning of Family Code section 6211, which is the code section that Civil Procedure section 1219B relies upon. So given that Appellee Nahn was the animal crimes prosecutor and a prosecutor presumed to know the law regarding the rights of victims, you would think that she would at least be aware of the existence of this statute and this case. Yet Appellee Nahn claims that she was not aware that. Well, she wasn't asking for a contempt order either. I mean, she was asking for a material witness order. So 1219B refers to a victim of domestic violence. And a sexual assault victim. She shall not be imprisoned or otherwise confined or placed in custody for contempt, meaning refusal to testify. So none of that actually happened in this case, right? Exactly. But that was intimated. She wasn't, there was no court order. She wasn't confined or placed in custody. She was arrested and brought to the tribunal. And no contempt order issued. So the applicability of that statute is unclear. Well, it says that she can't be taken into custody. It says placed in custody. Right. So I understand you're now making this argument. It doesn't seem directly on point and it wasn't made to the district court. So is that your strongest argument for a due process violation? That is just in the backdrop of this all is that it was never lawful to arrest her, even if she had refused to testify, which she did not refuse to testify. And I'd like to move on to that now. Appellee Nahn's declaration, there are at least nine points of fact which were either materially false or omitted factual information, which was material to the judge's determination before signing that warrant. And I also just want to be clear that it's not the warrant application in itself. It's the declaration that Appellee Nahn filed for which we are arguing that she is liable. So among others, there is this allegation that she was refusing to testify. Now, in reality, Appellee Nahn had never informed Appellant Martin that her testimony was ‑‑ sorry, that a subpoena had been issued. Now, refusing to honor a subpoena and then ‑‑ Didn't her lawyer indicate that she would not testify? She indicated that she did not want to assist the prosecution. It was not that she would refuse to honor a subpoena. And those are two very different things. We have the Arnsberg case, which makes clear that somewhat obstinately refusing, and that is a quote from the case, somewhat ‑‑ Was aware that there was a request for her testimony because the lawyer, because she instructed her lawyer to say she didn't want to help. But not a subpoena. A subpoena is different because that is a court ordering you to show up. So for a prosecutor to ask you, hey, will you show up, will you assist us, people have various reasons for not wanting to assist the prosecutor. And in that event, if the prosecutor really desires testimony, they issue a subpoena. But in order to refuse to honor a subpoena, you have to at least at minimum be informed that it exists. And that is something that did not happen here. And Appellant Martin, sorry, Appellant ‑‑ And how were they supposed to inform her that the subpoena existed? They would have had to get a hold of her. Right. Well, wasn't that the problem? That was the problem. But, you see, that was of their own doing because they kept waiting until the last minute. If I was seeking a witness for a trial and I waited until two days before the trial or one day before the trial each, and, by the way, that happened consistently throughout this case. They kept waiting until the last minute. And they can't find her. Well, it turned out that she was out of state. So that would come as no surprise. Somebody with Appellant Martin's position at Sonar would be traveling for work, and, in this case, they did have information pertaining to the location of her work in New York at that time. Yet they never followed up with that lead. Counsel, what's your best authority for the proposition that procedural due process requires a pre-arrest hearing? That's the point you're making, is it not? Right. With regard to the 14th Amendment, just to be clear. So our best authority would be the Cogswell case, which is from the California Supreme Court, which it interprets California Code of Civil Procedure 1219B and makes clear that you can't take these certain classes of victims into custody. And that is something that, again, Appellant Martin, an experienced prosecutor, over 20 years of experience, you would presume that she would know the law on that particular case. But she got a hearing. I'm sorry? She got a hearing and an opportunity to cross-examine witnesses. After she was arrested. Yes. And that was on very short notice. We're talking about within hours. Is there a case that says that you have X many hours before this can happen? We do have a case concerning preparation time when it comes to ‑‑ this was on the collateral estoppel issue, but it is relevant here. That's the Blanca case, which we had cited in our reply. So when there's insufficient time to prepare, no, it's not ‑‑ that's not an issue that had already been litigated. And it's also not ‑‑ it wouldn't be sufficient to give her process here after she's already taken into custody. To move for a continuance? I don't believe she moved for a continuance. But, you know, she was already taken into custody. She was in jail at that point. So the harm has already been done. And I'd also like to point out she didn't have an appellate remedy at that point because, as I mentioned, she's already been arrested. So with regard to the procedural due process, we have the Kovacic case, we have the Cogswell case, we have civil procedure section 1219B. There are also various other California Court of Appeal cases, which we cited in our briefs regarding section 1219B and how it may be used. Now, with regard to the Fourth Amendment argument, I'd just like to point out that the Bacon case, which establishes the term of art probable cause, meaning in the context of a material witness, it must be reasonable under all the circumstances. And it's different than taking a criminal into custody, sorry, an alleged criminal, because they are alleged to have committed a crime. Whereas a material witness is someone who is not alleged to have committed a crime. And you have to take special care so that their rights are not trampled upon. Now, in this case, Pellinan knows that Ms. Martin has not committed a crime, yet she filed this affidavit, which made all these representations about her avoiding service and things of that nature. She admitted the fact that she had never knocked on the door. You don't even have to be alleged to having committed a crime if you refuse service, even in a civil case. Right? She did not refuse service, though. That had never happened. And that's what I'm pointing out, is that was intimated in her declaration, in Pellinan's declaration, that she had actually refused service or refused to comply with the subpoena. That hadn't happened. What happened is she had expressed a desire not to cooperate with the prosecution, because the person they were prosecuting happened to be her fiancé. So that is her right. That is something that the Orangeburg case makes clear. But as far as refusing to testify, no, she never refused to testify. And that's something I just can't make that clear enough. My client had never refused to honor a subpoena. Another aspect of this, though, is the fact that the investigators, they never saw her car present at my client's home. So if they are suggesting that she's inside, ignoring attempts to serve her, yet this information about her car not being parked in front of her house, the judge would absolutely like to know that, because that suggests that she's not home. Or that she parked the car around the corner so no one would know she was there. I mean, I don't know that there's a very strong inference either way. Well, see, inferring that somebody is hiding because you can't find them, that's very problematic because it's ‑‑ There was no response. They claim they made multiple phone calls. There was no response. And the response in the brief is, well, it was an old phone. And they made numerous visits. And she knew that they were looking for her because she gives the message through the attorney. So the question is, was there enough in the declaration for reasonable inference that she was ducking? No, absolutely not. And that's the question for probable cause, right? Right. And what I'm also trying to make clear is it's not just the facts that I've also mentioned. It's also the fact that they had waited eight months after the original case had been dismissed before seeking this warrant. They were able to arrest her on the same day. Was there any statement that was simply false, false statement? I'm not talking about statements that can be subject to interpretation, but I mean a false statement in the affidavit. The suggestion that she's avoiding service, in my opinion, it's either true or it's false. I know that you're arguing that that's subject to interpretation. My argument is that that is actually a factual statement and it's false and it's something that she had not reasonably inquired into. Had she, she would have realized that she was not hiding. She was actually at work in New York. Now, as far as, so liability can also come from omissions, intentional or reckless omissions. The Cruz case makes that clear. So regarding, yes, you know, her avoiding service and this intimation that she had refused to testify, those are false. But there are also omissions concerning, yes, the appearance of her car, the fact that the investigating officers who were allegedly attempting to serve her never actually knocked on the door of the unit where she was said to live. They knocked on the next unit over. They assumed that it's the same building, that, you know, it's still her address. That's not the way it works. If you try to serve someone in an apartment building and you knock on the next door over, that's not going to be sufficient. Did you want to save some time for rebuttal? Yes, Your Honor. Thank you. Thank you. Good morning, Your Honors. Jessica Mead on behalf of Defendants County of Los Angeles and Defendant Deborah Nahn. I'd like to first start by saying that there is no constitutional violation in this case. The information in Nahn's declaration in support of the 1332 motion was accurate, and Ms. Martin's arrest was made pursuant to a warrant issued by a neutral magistrate. And based on a declaration that set forth individualized reasons to believe, Ms. Martin would not appear and testify unless security was required. Would you respond to Mr. Hans's answer to my question about falsity in the statement? There is no inaccurate statement in the declaration. Well, I mean, that's your conclusion. Respond to the allegations he's making here in oral argument. He says omissions. So he specifically said that there's a false statement in the declaration because it states that Ms. Martin was avoiding service. That statement is not contained in the declaration. The declaration states, I, Deborah Nahn, believe that Ms. Martin was avoiding service, and that belief is important because her belief depends on whether her belief was reasonable depends on her subjective knowledge. She had no reason to know that Ms. Martin was in New York. Ms. Martin testified at her deposition. She didn't tell anyone in law enforcement she was in New York. She didn't tell her attorney that she was in New York. She didn't give her attorney authority to accept service on her behalf, and she didn't have her attorney say, hey, she's out of town. Let me bring her before you. There's also no material omissions. The omission related to the vehicle isn't material to the good cause determination. As Your Honor pointed out, the vehicle could have been parked somewhere else, and Officer Charette also testified that when he first was looking for Ms. Martin and appeared at her residence on, I believe, May 16th, her car was in the driveway, and Ms. Martin claims that she was in New York at the time. So the presence or absence of her vehicle isn't material to whether or not she's not going to appear and testify unless security is required. What about Nahn actually knocking on her door? Nahn was not the person that was involved in the attempt to serve Ms. Martin. So she can't be held liable for the conduct of earlier efforts to attempt to serve her. Nahn's declaration set forth the efforts of law enforcement. It included the dates, and it included the times that they went and tried to serve her. It's stated in the declaration that the Officer Charette knocked on the only door that was accessible from the sidewalk. And the fact that the door, that they didn't actually knock on the 1509 door is not material because if that door is not accessible from the sidewalk and no one is answering the only door that is accessible, that's again good cause to believe they're not going to be able to get her to appear and testify unless security is required. Even if Ms. Martin could establish that there was not sufficient probable cause, Nahn and the county would both still be entitled to judgment. Nahn has absolute immunity for bringing the 1332 motion in the first place. But not for the declaration. She has qualified immunity for the declaration. But it's clearly established you can't put in false or misleading information. So to the extent that's his claim, I'm not sure what the immunity would be. On a judicial deception claim, the Ninth Circuit has held that in order to defeat qualified immunity, there has to be a substantial showing of deliberate falsehood or reckless disregard for the truth. Ms. Nahn did not act with reckless disregard for the truth. She reached out to the district attorney that was involved in the initial filing. She reached out to the LAPD police officer that was involved in the initial investigation and efforts to serve Nahn for the preliminary hearing. And she reached out to the DA investigator that tried to serve Nahn for trial. She independently communicated with each of them. She reviewed the e-mails between the investigator and between the district attorney in order to make sure that their statements were accurate. And she also saw an earlier burglary report where Ms. Martin had previously reported that Hervey had burglarized her residence. And then when she reconciled with Hervey, she asked the investigating officer to throw the report away. And then Nahn provided the declaration to each of the three individuals so they could check and make sure it was accurate. There's no evidence on the record of reckless disregard. And therefore, Nahn is protected by qualified immunity for filing the declaration. And what you're just telling us is all on the record? Yes, that's correct. The record. How about the protection provided by 1219B? That's inapplicable in this case because, again, that had to do with contempt. And Nahn is absolutely immune for bringing the 1332 motion in the first place. The only issue as to her liability is whether or not she acted with reckless disregard for the truth in filing her declaration, such that her qualified immunity for filing the declaration is defeated. I'll move on to county's Monell claim or to the Monell claim against the county. There's no basis on the record or that Ms. Martin can allege to state a Monell claim against the county. The only allegation in the complaint that Ms. Martin points to as the basis of her Monell claim is the allegation that Deborah Nahn acted pursuant to the district attorney's office's policies and procedures for procuring the arrests of material witnesses without cause to do so. And Ms. Martin claims that based on the action of a policymaker, there is policymaker liability. For a county to be held liable based on the actions of a municipal policymaker, there has to be final policymaking authority from that municipality. And that is determined as a matter of state law. The California Supreme Court has clearly held that the district attorney's office acts on behalf of the state and not on behalf of the county when developing and implementing policies related to the prosecutions of individual crimes. The Ninth Circuit in Goldstein followed that and found that the alleged policy of coercing witness testimony and obtaining false confessions was inextricably linked to the prosecution of crime. That's on all fours with this case. The policy of arresting material witnesses is inextricably linked to prosecuting the crime that the witness was material to. The only other basis that Ms. Martin tries to state a claim for Monell liability is based on the failure to train. And this court has held that the failure to train is the most difficult basis to state a claim for Monell liability unless there is a pattern of repeated violations by untrained employees, the unconstitutional consequences of the failure to train has to be patently obvious. And the Supreme Court has held in Connick that constitutional violations are not a patently obvious result of the failure to train prosecutors on how to obey the law, given the extensive legal training they have to go through to become prosecutors. And again, that case is on all fours here. Constitutional violations are not a patently obvious consequence of failing to train prosecutors on how to follow Penal Code Section 1332. There's no set of facts that Ms. Martin can allege to state a Monell claim against county, and the record establishes that Ms. Nahn is entitled to qualified immunity for the statements made in her declaration. There's no material omission, and there is no false statements in the declaration. Okay. I think we have your argument. Thank you. Thank you. We have a few seconds for rebuttal. Thank you, Your Honors. So first, I'd like to say I agree with this Court and with counsel that the law is clearly established regarding the affidavits and material falsehoods and omissions, and thus that the issue is whether those falsehoods and omissions were material. With regard to counsel's arguments regarding Monell, I would like to point out that under the law of this circuit, when a prosecutor does something that is outside the scope of prosecution, there is a statutory immunity that they are acting on behalf of the county and not the state. And here we have Apelli Nahn holds herself out as a policymaker for the county. She boasts on her website that she has helped draft legislation, that she helped run and establish the Animal Crimes Unit of the Los Angeles District Attorney's Office, and thus she is a policymaker on behalf of the county, and her acts can incur liability for the county on that basis. Thank you. Thank you. Thank both parties for the argument.
judges: O'scannlain, Ikuta, Steeh